IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MANUEL GARDNER,

      Petitioner,

                                 No. 2:23-cv-0191 JCH/DLM

GEORGE STEPHENSON, and
ATTORNEY GENERAL for the
STATE OF NEW MEXICO,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

THIS MATTER is before the Court on Petitioner Manuel Gardner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) and Motions to Appoint Counsel (Docs. 13; 15). Having considered the record and the relevant law, the Court concludes that Gardner has filed a mixed petition containing both exhausted and unexhausted claims. I recommend finding, however, that all Gardner's claims should be denied on the merits. I further recommend denying his motions to appoint counsel.

I.    **Factual and Procedural Background**

Gardner is serving a term of life imprisonment in the custody of the New Mexico Corrections Department pursuant to an October 5, 2015 judgment entered in *New Mexico v. Gardner*, D-202-CR-2013-04043. (*See* Doc. 9-1 at 44–45.[2]) Gardner's convictions stem from the July 19, 2013 armed robbery of the National Jewelry Buyers (NJB) store in Albuquerque, and the

---

[1] United States District Judge Judith Herrera entered an Order of Reference on January 9, 2024, referring this case to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 6.)

[2] The Court will refer to the exhibits to Documents 9 and 10 using, *e.g.*, Doc. 9-1 or 10-2 and the CM/ECF pagination.

shooting death of Richard Glass, an NJB employee. (*See id.* at 329–30.) The Court will briefly summarize the facts underlying the convictions at issue in this matter, primarily as they are outlined in the New Mexico Supreme Court's Decision denying Gardner's appeal. (*See id.* at 328–49.)

According to the evidence adduced at trial, Glass worked at NJB, a store that pays cash for jewelry. (*Id.* at 329.) The cash is secured in a locked desk drawer. (*Id.*)

> At 5:05p.m. [on July 19, 2013], a man wearing baggy jean shorts, black tennis shoes with white trim, a black hooded sweatshirt (hoodie) with the hood pulled over his head, and a red [bandana] covering his face entered the store, shot Mr. Glass three times with a 9 millimeter handgun, and took a money pouch from the desk drawer. The man then ran from the store and drove away in a white, four-door, police-type sedan . . . .

(*Id.* at 329–30.) Although no one witnessed the actual shooting, surveillance cameras inside the store captured video of the incident, and surveillance cameras from nearby businesses captured video of the man walking around before the crime. (*Id.* at 330.) Ruphay Penaloza, an employee from a nearby car dealership (Integrity Automotive), heard gunshots, saw a man wearing a black hoodie and red bandana run from the building, and walked to NJB to investigate. (*See id.*) When he saw Glass's body, he called 911. (*Id.*)

Karina Luna, a customer present at Integrity Automotive, saw a white car stopped nearby. (*Id.*) She recalled a man wearing a black hoodie sitting in or standing near the car. (*Id.*) After hearing gunshots, Luna went with Penaloza into NJB and saw Glass lying on the floor. (*Id.*)

Luis Fernandez, another Integrity Automotive customer, testified that "he was unable to turn into the side street between NJB and Integrity because a white Crown Victoria with Texas license plates was stopped . . . in front of the NJB store." (*Id.* at 330–31.) Fernandez recalled that the car's window was down even though it had been a rainy day. (*Id.* at 331.)

2

Police released part of the surveillance video to the media to get help identifying the shooter. (*See id.*) Virgie Russ saw the video and believed she recognized the man. (*See id.* at 332.) Russ lives "at the end of a residential cul-de-sac in northwest Albuquerque and had recently noticed a white Crown Victoria parked on her street." (*Id.*) On several occasions, Russ saw a man park the car in the cul-de-sac then walk through a neighbor's yard and jump a wall dividing the area from an adjacent apartment complex. (*See id.*; *see also* Doc. 10-3 at 28, 32.) She testified that "the man almost always wore a black hooded sweatshirt, baggy jean shorts, and black tennis shoes with white trim." (*See* Doc. 9-1 at 332.) She "believed this man moved like the man she saw on the video." (*Id.*)

Bernard Sandoval, who lived in the same cul-de-sac, testified that he saw the same white vehicle parked in front of his home. (*See* Doc. 10-2 at 147.) He knew the vehicle did not belong to his neighbors and suspected it was stolen, so he called the police department to report it. (*Id.*) Sandoval noticed that the car did not have a license plate or a window. (*Id.* at 148.) He later saw the vehicle bearing a Texas license plate. (*Id.* at 148–49.)

Albuquerque Police Officer Shawn Lockey went to Russ and Sandoval's neighborhood and found the white Crown Victoria. (Doc. 9-1 at 332.) He saw the car's driver's side window was missing and noticed a "reddish pinkish" bandana inside. (*Id.*) Lockey called Detective Kevin Sanchez to assist. (*Id.*) Sanchez saw the bandana and a pay stub bearing Gardner's name inside the car. (*Id.* at 332–33.) Sanchez surveilled the apartment complex and observed Gardner exit an apartment and get into the Crown Victoria. (*Id.* at 333.)

Officers interviewed Ashley Sanchez, who lived in the apartment. (*Id.*) Sanchez and Gardner had previously been in a relationship but split up due to his drug use and unemployment. (*See id.*) The couple had two children together. (*See id.*) Gardner kept his belongings at Sanchez's

apartment and sometimes watched their children while she was at work. (*Id.*) "Sanchez identified the white Crown Victoria as [Gardner's] and said he parked it [in the cul-de-sac] because it would have been towed if parked at the apartment complex without a license plate." (*Id.*) Officers searched Sanchez's apartment pursuant to a warrant "and found a pair of jean shorts and black tennis shoes with white trim, which Sanchez identified as" Gardner's. (*Id.*)

"APD Detective Holly Anderson interviewed [Gardner] on August 10, 2013, and a video of the interview was introduced into evidence." (*Id.*) Gardner admitted that he sold jewelry to Glass/NJB in the past, but he denied committing the crime. (*Id.* at 333–34.) At trial, the State introduced evidence to show that Gardner sold jewelry to NJB nine times and as recently as June 2013. (*Id.* at 334.) The NJB store owner testified that "the money paid to sellers was kept in a locked drawer of the desk where Mr. Glass sat." (*Id.*)

The State called Shannon Villegas to testify at trial. (*Id.*) Villegas was incarcerated in the Metropolitan Detention Center at the same time as Gardner. (*See id.*) Villegas testified that he heard Gardner talk about this case and admit "that he went in and 'shot the dude in the chest.'" (*Id.*) Gardner's attorney, Armando Torres, "point[ed] out several inconsistencies in [Villegas's] testimony" on cross-examination. (*See id.* at 335.)

The State called Robin Thomas to testify at trial. (*Id.*) Thomas was incarcerated in the Polk County Detention Center (PCDC) in Texas and testified he was there at the same time as Gardner. (*See id.*) Thomas testified that he heard Gardner admit to this crime. (*Id.*) Thomas admitted to 23 felony convictions, including crimes of dishonesty. (*See id.*) Gardner's attorney noted during cross-examination that Gardner "was not transferred to PCDC until November [2013], after Thomas said he was released." (*Id.*)

On August 7, 2015, the jury found Gardner guilty of (1) First Degree Murder by a

Deliberate Killing and (2) Armed Robbery. (*Id.* at 37, 42, 336.) On October 5, 2015, the court sentenced Gardner to life imprisonment on the murder conviction and to ten years on the armed robbery conviction to be served concurrently. (*Id.* at 44–45, 336.)

On November 12, 2015, Gardner moved for a new trial. (*Id.* at 46–47.) Gardner offered evidence to show that Thomas, who testified that he heard Gardner admit to the crime while both men were incarcerated at PCDC, was not actually housed at PCDC when Thomas was there. (*See id.* at 46–48.) Thus, Gardner argued, he was entitled to a new trial because the State obtained the conviction based on Thomas's perjured testimony. (*Id.* at 47.) In its order denying Gardner's motion, the district court stated that "[u]pon speaking with the jury after trial, it was clear that the jury did not find [Thomas's] testimony persuasive and did not consider it in making their decision." (*Id.* at 53–54.) The Court found:

> there was a host of other inculpatory evidence in this case, apart from Mr. Thomas's testimony. In particular, there was surveillance video of the killing in which the masked killer closely resembled Mr. Gardner. Clothing that closely resembled the clothing worn by the killer was found at Mr. Gardner's girlfriend's apartment. There was video of the vehicle in which the killer fled, and that vehicle closely resembled the vehicle that Mr. Gardner drove. A bandana closely resembling the one worn by the killer was observed in Mr. Gardner's car. A civilian witness had observed Mr. Gardner exiting his vehicle and moving along the street; that witness testified that he looked like the same person in the surveillance video of the killing. There was record that [Gardner] had done business at the scene of the murder on prior occasions, with the victim.

(*Id.* at 54.) "Based on the totality of the evidence, the Court [found] that there was sufficient evidence to sustain a conviction absent Mr. Thomas's testimony." (*Id.*)

### A.    Direct Appeal

On June 7, 2016, Gardner filed a direct appeal to the New Mexico Supreme Court. (*Id.* at 56.) Through counsel Torres, Gardner argued four issues in his brief-in-chief:

Issue I:        The district court erred in failing to instruct the jury on how to

evaluate circumstantial evidence.

Issue II:      The State failed to present sufficient evidence to support a conviction.

Issue III:     The State failed to disclose jail records showing Inmate Thomas and Manuel Gardner were never in [PCDC] together resulting in a *Brady/Giglio* violation.

Issue IV:     The district court erred in denying the Motion for New Trial.

(*Id.* at 236–37.)

On March 8, 2018, the New Mexico Supreme Court affirmed the judgment and sentence.

(*See id.* at 328–49.) The New Mexico Supreme Court issued its mandate on March 28, 2018. (*Id.* at 350.) On October 1, 2018, the United States Supreme Court denied Gardner's petition for a writ of certiorari. (*Id.* at 351.)

**B.      State Habeas Petition**

On September 18, 2019, Gardner filed a pro se petition for writ of habeas corpus in the state district court. (*See id.* at 358–401.) The court appointed counsel Sarah Gallegos, who filed an Amended Petition for Writ of Habeas Corpus on June 22, 2020. (*See id.* at 402–577.) Gardner listed the following grounds for relief:[3]

Ground 1:      Ineffective assistance of counsel for failing to investigate and pursue pretrial motions including an alibi defense, exclusion of jailhouse snitch testimony or request for curative instruction, suppression for *Miranda* violation, change of venue, suppression of bandana for illegal search and seizure, pretrial release, and *Brady* violation.

---

[3] Gardner asserted the following issues in his pro se petition: (1) illegal search and seizure; (2) *Brady/Giglio* violation; (3) ineffective assistance of counsel due to Torres's alleged failure to: (a) file pretrial motions; (b) secure a racially diverse jury panel; (c) investigate Thomas; (d) investigate Gardner's alibi; (e) call defense witnesses; (f) allow Gardner to testify; (g) impeach State's witnesses; (h) object to introduction of bandana; (i) maintain objection to officer who showed jury evidence before it was properly admitted; (j) be present at sentencing hearing or make good arguments at sentencing; (k) timely file motion for retrial or allow Gardner to attend hearing on motion for new trial. (Doc. 9-1 at 366–90, 404.)
Gardner's state habeas counsel explained that she did not withdraw these claims, but rather amended and restated them into the issues outlined in the Amended Petition. (*See id.* at 404–05.)

Ground 2:     Ineffective assistance of counsel for failure to call witnesses.

Ground 3:     Ineffective assistance of counsel for failure to impeach witnesses.

Ground 4:     Ineffective assistance of counsel for failure to object to evidentiary issues.

Ground 5:     Ineffective assistance of counsel for failure to allow Gardner to testify.

Ground 6:     Ineffective assistance of counsel for failure to ensure a racially diverse jury panel.

Ground 7:     Ineffective assistance of counsel for failure to present mitigating evidence at sentencing.

Ground 8:     Ineffective assistance of counsel for failure to timely file motion for new trial.

Ground 9:     Gardner's convictions were obtained in violation of his state and federal right to due process and a fair trial.

(*Id.* at 405–06.)

The district court held an evidentiary hearing on the Amended Petition on June 28, 2022. (*See* Doc. 11.) Gardner, his mother, and others testified at the hearing. (*See id.*) Because trial counsel Torres died before the hearing, "the parties stipulated to the admission of his March 15, 2021 affidavit." (Doc. 9 at 13 (citing Docs. 9-1 at 597–600; 9-2 at 176).) The district court denied the petition on the merits (Doc. 9-2 at 170–204), and the state supreme court denied Gardner's request for review (*id.* at 322).

## C.     Gardner's § 2254 Claims

Gardner filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody on March 6, 2023. (Doc. 1.) He brings the following claims:

Ground 1:     Ineffective assistance of counsel for failing to move for change of venue, investigate his alibi, call defense witnesses, interview David Macias, impeach state witnesses, request curative instructions

regarding jailhouse snitches, suppress statements for *Miranda* violation, allow Gardner to testify, object to the officer who showed clothing to jury before it was admitted into evidence.

Ground 2:    *Brady*/*Giglio* violation regarding Thomas's PCDC records.

Ground 3:    Insufficient evidence to support conviction.

Ground 4:    Violation of his *Miranda* rights.

(Doc. 1 at 5, 8–9, 11, 17–36.)

Respondents filed an answer on February 28, 2024, and argue that Gardner has filed a mixed petition containing both exhausted and unexhausted claims. (*See* Doc. 9 at 17–20.) Respondents ask the Court to deny *all* the claims on the merits. (*See id.* at 20, 34.)

## II.    Legal Standards

### A.    Exhaustion of State Court Remedies

"A state prisoner generally may not raise a claim for federal habeas corpus relief unless he 'has exhausted the remedies available in the courts of the State.'" *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires that a state prisoner pursue his claims "through 'one complete round of the State's established appellate review process,' giving the state courts a 'full and fair opportunity' to correct alleged constitutional errors." *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In other words, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011) (citing *O'Sullivan*, 526 U.S. at 845; 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 23.3 [b], at 1205–06 (6th ed. 2011) ("[T]he petitioner satisfies her exhaustion burden by raising a claim at all stages of the state's appellate review process (including discretionary state appeals).")).

8

Federal courts normally will not consider unexhausted claims "unless exhaustion would have been futile because either 'there is an absence of available State corrective process' or 'circumstances exist that render such process ineffective to protect the rights of the applicant.'" *Selsor*, 644 F.3d at 1026 (quoting 28 U.S.C. §§ 2254(b)(1)(B)(i), (ii)). "The state prisoner bears the burden of proving that he exhausted state court remedies[] or that exhaustion would have been futile." *Id.* (citations omitted).

### B.    Mixed Petitions

Where a petitioner brings a "mixed petition" containing both exhausted and unexhausted claims, the court may:

> (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (quotation and internal citations omitted). As explained below, I find Gardner's unexhausted claims are meritless and "easily resolvable against" him. *See Rudolph v. Galetka*, 208 F.3d 227, at *1 (10th Cir. 2000) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Thus, I recommend the Court ignore the exhaustion requirement and deny the entire petition on the merits. *See id.* ("[W]here the district court is convinced the unexhausted claim is without merit, or that the issue is easily resolvable against the [petitioner], the court may reach the merits of the claim rather than dismiss the petition.") (discussing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).

9

### C.    28 U.S.C. § 2254 Standard

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996, 110 Stat. 1214, governs Gardner's petition. When a state court has adjudicated a claim on

the merits, habeas relief under § 2254(d) is not available unless the state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Court's review of the state court's decision is "highly deferential."

*See Cortez-Lazcano v. Whitten*, 81 F.4th 1074, 1082 (10th Cir. 2023) (citing 28 U.S.C. § 2254(d)).

## III.   Analysis

Respondents argue that Gardner brings a mixed petition. (Doc. 9 at 17.) They assert

Gardner exhausted all his claims except two: (1) the portion of the ineffective assistance of counsel

claim related to David Macias (Ground 1); and (2) the claim for violation of his *Miranda* rights

(Ground 4). (*Id.* at 18–19.) Although Gardner bears the burden of establishing exhaustion, *see*

*Lackawanna Cnty. Dist. Atty. v. Cross*, 532 U.S. 394, 404 (2001), he failed to file a reply brief to

Respondents' answer.[4]

Having reviewed the record, the Court agrees with Respondents. Gardner raised the

insufficient evidence and *Brady* claims to the New Mexico Supreme Court on direct appeal. (Doc.

9-1 at 236–37.) With the exception of the subclaim related to Macias, Gardner raised his ineffective

assistance claim to the state habeas court (*id.* at 405–06), and the New Mexico Supreme Court

---

[4] Gardner filed two motions to appoint counsel after Respondents filed their answer, but he did not address exhaustion or make any substantive argument. (Docs. 13; 15.) The Court explicitly gave Gardner 21 days to file a reply brief to Respondents' answer. (Doc. 8.)

denied his request for review. (*Id.* at 322.) Gardner has not previously asserted his claim about Macias or his claim based on the *Miranda* violation. As "exhaustion requires each claim to be 'properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack[,]'" these two claims remain unexhausted. *See Power v. Santistevan*, No. CV 19-1055 KWR/SCY, 2023 WL 3230522, at *5 (D.N.M. May 3, 2023), *R&R adopted*, 2023 WL 4248175 (D.N.M. June 29, 2023) (quoting *Dever v. Kan. State Penitentiary*, 36 1531, 1534 (10th Cir. 1994)). As explained below, I find these two unexhausted claims are meritless. I recommend ignoring the exhaustion requirement and denying the entire petition on the merits.

### A.  Gardner fails to show he is entitled to relief on Ground 1: Ineffective Assistance of Counsel.

Gardner asserts that Torres provided ineffective assistance of counsel for a variety of decisions Torres made before and during trial. (Doc. 1 at 5, 17–20.) To succeed on an ineffective assistance of counsel claim, Gardner must show by a preponderance of the evidence that: (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Courts may address the two prongs "in any order, and failure to satisfy either is dispositive." *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012) (citation omitted). To demonstrate that an attorney's "deficient performance prejudiced the defense[,]" the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

As explained below, the Court finds Gardner fails to establish that Torres's representation "fell below an objective standard of reasonableness" or that any deficiency in his representation

prejudiced Gardner's defense. *See id.* at 687–88. (*See also* Doc. 1 at 17–20.)

    **1. Failure to move for a change of venue**: Gardner alleges he told Torres "it would be wise to get a change of venue[] because of the media attention surrounding the case." (*Id.* at 17.) Torres told Gardner that the judge would never grant the motion. (*Id.*) The state district court considered this issue and noted Torres's statement that he declined to "file a motion for a change of venue because he did not feel the case had received enough pretrial publicity to warrant one." (Doc. 9-2 at 191 (citation omitted).) Moreover, Torres "could not recall any member of the jury panel who had heard about the circumstances of [Gardner's] case." (*Id.* (citation omitted).)

    The state court found Gardner failed to meet his burden to show that Torres's performance was deficient or that his defense was prejudiced. (*See id.*) Here, Gardner fails to argue that the state court's finding was unreasonable or contrary to law, nor does he address or meet his burden under the *Strickland* standard. (*See* Doc. 1 at 17.) I recommend denying this subclaim.

    **2–3. Failure to investigate Gardner's alibi or to call defense witnesses**: Gardner alleges "that he was at home with his two young children" at the time of the crime. (*Id.* at 17–18.) He informed Torres of his alibi defense, but Torres said the State had daycare records to show the children were at daycare. (*See id.* at 18.) Still, Torres hired a private investigator who produced daycare records three days before trial that established the children were not at daycare. (*Id.*) Gardner also complains that Torres did not call defense witnesses, including Gardner's mother or sister, who "were both willing and ready to testify with records showing they could not have babysat the children" on the day of the crime. (*Id.* at 18–19.) Gardner asserts that a juror asked the judge during trial if she could hear from the mother or sister on this issue. (*Id.* at 18.)

    The state district court considered these and other allegations related to Gardner's alibi defense. (Doc. 9-2 at 181–84.) According to Torres's affidavit, the court observed, Torres

interviewed "individuals related to [Gardner's] alibi defense, including" the children's mother (Sanchez) and Gardner's mother and sister. (*Id.* at 182.) Torres determined that Sanchez—not Gardner—cared for the children on the day of the crime, and that Gardner's mother did not want to testify. (*Id.*) The state court found that Gardner failed to show ineffective assistance of counsel on these facts, as the daycare records were admitted into evidence and Torres questioned Sanchez at trial. (*Id.* at 183.) Moreover, Gardner did not establish that "there is a reasonable probability that [his mother's] testimony would have changed the result of the trial." (*Id.*)

Gardner adds nothing to his § 2254 Petition to show that the state court's finding was unreasonable or contrary to law, nor does he address or meet his burden under *Strickland* on the issues of failing to investigate his alibi defense or call defense witnesses. (*See* Doc. 1 at 18–19.) Consequently, I recommend denying these subclaims.

**4. Failure to interview David Macias**: This is one of Gardner's two unexhausted claims, and I recommend finding it meritless. Gardner alleges that "the state wanted to postpone the trial to find the Confidential Informant" David Macias, but the judge declined to postpone and the trial went forward without Macias. (*Id.* at 18.) Gardner believed "he had a right to face his [accuser], but [Torres] said it would be better if [Macias] did not show up to trial." (*Id.*) Gardner further alleges that Torres failed to interview Macias. (*Id.* at 20.) Gardner attaches an unsworn letter dated September 13, 2021, purportedly written by Macias, that states he "would like to retract [his] [statement] regarding Manuel Gardner . . . ." (*Id.* at 25.) Yet Gardner fails to elaborate on what Macias's statement was, nor how he would have testified had Torres interviewed him. (*See id.*)

Gardner does not attempt to develop any argument to establish that Torres's conduct in not finding and interviewing a confidential informant, whose possible testimony is unknown, fell below an objective standard of reasonableness. With respect to *Strickland*'s prejudice prong,

13

Gardner summarily concludes that if Torres had "brought this up in pre-trial motions or at trial the outcome most likely would have been different . . . ." (*Id.* at 20.) As Respondents note, however, "[t]he Tenth Circuit 'ha[s] repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel.'" (Doc. 9 at 25 (quoting *Quintana v. Mulheron*, 788 F. App'x 604, 609 (10th Cir. 2019)).) Gardner fails to offer evidence or argument regarding Macias's possible testimony, and thus he has not demonstrated that any failure on Torres's part prejudiced the defense, particularly where the evidence of his guilt was considerable. (*See, e.g.*, Doc. 9-1 at 54.) Accordingly, I recommend finding that this subclaim fails on the merits.

**5–6. Failure to impeach state witnesses or request curative instructions regarding jailhouse snitch testimony**: Gardner alleges that Torres failed to impeach Thomas, the jailhouse snitch who testified against him but who was not housed with Gardner at PCDC. (*See* Doc. 1 at 19.) Relatedly, Gardner argues that Torres "should have requested the Tenth Circuit Criminal Pattern Jury Instruction 1.14," which advises jurors to carefully "examine and weigh an informant's testimony" in case the informant is motivated by self-interest. (*See id.*) *See also* 10th Cir. Pattern Jury Instruction 1.14.

The state habeas court considered these issues and found Torres *did* impeach Thomas's credibility at trial. (Doc. 9-2 at 186.) Moreover, the court reviewed the order denying Gardner's motion for new trial, in which the trial judge noted that she "did not find [Thomas's] testimony particularly persuasive" and, "[u]pon speaking with the jury after trial, it was clear that the jury did not find this testimony persuasive and did not consider it in making their decision." (*See id.*; *see also* Doc. 9-1 at 53–54.) Regarding the jury instruction, the court found that Torres appropriately "made a strategic decision not to challenge the testimony of the jailhouse informants except through cross-examination." (Doc. 9-2 at 201.) Regardless, the court gave an instruction

about witness credibility that advised jurors to consider "any interest, bias or prejudice" of the witnesses. (*See* Doc. 9-1 at 29.)

I find that Gardner fails to argue or establish that the state court's findings on these claims were unreasonable or contrary to law, nor does he meet the *Strickland* standard. I recommend denying these subclaims.[5]

**7–8. Failure to move to suppress statements for a *Miranda* violation or to allow Gardner to testify**: Gardner alleges that Torres failed to move to suppress statements Gardner made to detectives in violation of his *Miranda* rights. (Doc. 1 at 19.) He also contends that he "wanted the jury to hear he had no criminal history[,]" but Torres did not allow him to testify. (*Id.* at 19–20.) Gardner made similar arguments in his state habeas petition. (*See* Doc. 9-1 at 423–34, 443–45.) "The State [did] not dispute that Mr. Torres could have pursued a meritorious pretrial motion to suppress . . . ." (*See* Doc. 9-2 at 187.) Torres stated in his affidavit, however, that his decision not to file a motion was strategic, as "the statement did not contain any inculpating admissions." (*Id.* at 188 (citation omitted).) Torres averred that Gardner "told him he did not want to testify and had good reasons for not testifying, including that he did not want to be cross-examined about his drug use and addiction." (*Id.* at 187 (citation omitted).) Torres explained that after consulting with Gardner, he decided not to file a motion to exclude the statement but instead "would attempt to limit it to exclude any mention of [Gardner's] drug use and addiction, so that the statement could be used to present [his] side of the story or potential defenses to the jury without [Gardner] having to testify." (*Id.* at 187–88 (citation omitted).)

---

[5] Gardner also summarily asserts that Torres forgot to file paperwork to have Gardner appear at the hearing on his motion for new trial. (*See* Doc. 1 at 20.) Gardner submits no argument to show that Torres's conduct prejudiced him, nor does the undersigned find such prejudice. (*See id.*) To the extent Gardner intends to assert this as a separate ineffective assistance of counsel subclaim, I recommend denying it on the merits, even though it does not appear to be exhausted.

The state habeas court found that although the trial court allowed the State to present evidence about Gardner's drug use to show motive, Torres's "trial tactic was [not] unreasonable simply because it was not successful." (*See id.* at 189 (citing *Lytle v. Jordan*, 22 P.3d 666, 680 (N.M. 2001) ("A claim of ineffective assistance of counsel does not present an opportunity for hindsight review."); *New Mexico v. Hester*, 979 P.2d 729, 733 (N.M. 1999) ("The mere fact that the defense was not successful does not equate to a finding of ineffective assistance of counsel.")).) The undersigned agrees, and Gardner fails to argue or demonstrate that the state court's finding was unreasonable or contrary to law. Nor does Gardner argue that any alleged deficiency prejudiced his defense. I recommend denying these subclaims.

**9. Failure to maintain objection regarding the officer who showed clothing to the jury before it was properly admitted**: Gardner alleges that Torres "failed to object to articles of clothing shown to the jury before introduced into evidence" and "withdrew an objection that should have been preserved for appeals." (Doc. 1 at 20.) This allegation relates to the shorts detectives recovered from Sanchez's apartment. (*See* Doc. 9-1 at 333.) At trial, a detective showed the shorts to the jury before they were properly admitted into evidence. (*See* Doc. 1 at 26; *see also* Doc. 9 at 26 (citing Doc. 10-2 at 165–71).) Torres objected at trial, and the trial court held a sidebar with the attorneys. (*See* Doc. 10-2 at 165–71.) The trial court agreed that the State's witness showed the jury the shorts before they were properly admitted. (*See id.* at 171–72.) Torres eventually withdrew the objection. (*See id.* at 172.)

The state habeas court considered this issue and summarily dismissed it, as Gardner failed to properly develop the argument. (*See* Doc. 9-2 at 198.) Likewise, Gardner fails to develop it here. (Doc. 1 at 20.) As Respondents point out in their Answer, the jury had already seen photos of the shorts, the witness identified the clothing in the photos, and they jury saw surveillance footage that

showed the shooter in similar shorts. (*See* Doc. 9 at 26.) The Court agrees with Respondents that under "these circumstances, Mr. Gardner cannot show that he was prejudiced by the out-of-order introduction of his clothes into evidence." (*See id.*) Gardner has neither established that his defense was prejudiced by Torres's withdrawal of the objection, nor has he argued that the state court's finding was unreasonable or contrary to law. (*See* Doc. 1 at 20.) Consequently, I recommend denying this subclaim.

In sum, Gardner fails to meet his burden to show that he is entitled to relief on his ineffective assistance of counsel claim in Ground 1. I recommend denying the claim on the merits.[6]

### B.       Gardner fails to show he is entitled to relief on Ground 2: *Brady/Giglio* Violation.

Gardner asserts the State committed a *Brady* or *Giglio* violation because it called Robin Thomas to testify when PCDC records showed that Thomas and Gardner were not housed together. (*See* Doc. 1 at 28.) The State has certain obligations to disclose to defendants exculpatory evidence, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), and evidence that affects a witness's credibility, *see Giglio v. United States*, 405 U.S. 150, 154 (1972). To establish a *Brady* or *Giglio* violation, the defendant must show: (1) the evidence is "favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the State suppressed the evidence, "either willfully or inadvertently;" and (3) the suppression of the evidence prejudiced the defendant. *United States v. Durham*, 902 F.3d 1180, 1221 (10th Cir. 2018) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)) (citing *United States v. DeLuna*, 10 F.3d 1529, 1534 (10th Cir. 1993)).

---

[6] Gardner also summarily asserts at the end of Ground 1 that "this is a case of cumulative deficiency, compromising the fundamental fairness of the proceedings." (Doc. 1 at 20.) He raised the same issue in his state habeas petition, but the court disagreed and found Gardner received a fair trial. (Doc. 9-2 at 203.) Gardner develops no argument to show otherwise. It is unclear whether Gardner intends to raise this as a separate subclaim, but to the extent he does, the undersigned recommends denying it on the merits.

The New Mexico Supreme Court denied this claim on direct appeal, where Gardner's argument was more developed. (*See* Doc. 9-1 at 343–48.) There, Gardner argued "that the State knew or should have known that Thomas was not in PCDC at the same time" he was. (*Id.* at 344.) He further argued that he did not receive a fair trial as the jury relied on Thomas's perjured testimony to convict him. (*Id.*) Because Gardner did not raise this issue until he moved for a new trial, the New Mexico Supreme Court reviewed the argument for fundamental error and found that even if Thomas committed perjury, his testimony did not have "such a persuasive and prejudicial effect on the jury's verdict that [Gardner] was deprived of a fair trial." (*Id.* at 345–46 (citing *New Mexico v. Allen*, 994 P.2d 728, 760 (N.M. 1999)).) The court reasoned that Torres "effectively tarnished Thomas's credibility as a witness" by pointing out the inconsistencies in the dates Thomas and Gardner were incarcerated at PCDC. (*See id.* at 346.) The court stated "[t]his was reflected in the order denying the motion for new trial in which the district judge stated that 'it was clear that the jury did not find [Thomas's] testimony persuasive and did not consider it in making their decision.'" (*Id.*)

The undersigned agrees with the New Mexico Supreme Court. Thomas stated on cross-examination that he left PCDC in October, and Torres adequately impeached him by asking whether it would surprise him "to know that Mr. Gardner didn't go to [PCDC] until November[.]" (Doc. 10-4 at 71–72.) Critically, the record establishes that the jury did not consider Thomas's testimony persuasive. (*See* Doc. 9-1 at 53–54.) Clearly, even if the State suppressed evidence about Thomas, the suppression did not result in prejudice to Gardner, a necessary element to this claim. *See Durham*, 902 F.3d at 1221. I therefore recommend the Court deny this claim.

**C.**  **Gardner fails to show he is entitled to relief on Ground 3: Insufficient Evidence.**

In his third ground for relief, Gardner argues that the State failed to present evidence sufficient to convict him. (*See* Doc. 1 at 31.) Gardner presented this argument to the New Mexico Supreme Court. (*See* Doc. 9-1 at 340–43.)

**1.**  **Legal Standard**

"A sufficiency-of-the-evidence challenge in a habeas petition presents a mixed question of fact and law." *Hooks*, 689 F.3d at 1165 (citing *Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008)). The Court must "ask whether the facts are correct and whether the law was properly applied to the facts," and thus the Court "'appl[ies] both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency of the evidence on habeas.'" *Id.* (quoting *Brown*, 515 F.3d at 1089).

In analyzing a claim under § 2254(d)(2), the Court's analysis is governed by the Supreme Court's opinion in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, the Court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Meek v. Martin*, 74 F.4th 1223, 1252 (10th Cir. 2023) (quoting *Jackson*, 443 U.S. at 319). The Court considers "both direct *and* circumstantial evidence" and is "highly deferential . . . to the jury's verdict[,]" recognizing the jury's responsibility "fairly to resolve conflicts in . . . testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See id.* (quotation marks and citations omitted). "Where the record might support 'conflicting inferences,' [the Court] presume[s] . . . [the] jury[] 'resolved any such conflicts in favor of the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326) (citing *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) ("The Court may not weigh conflicting evidence nor consider the credibility of

witnesses.")). The Court is not to decide "whether the jury's determination of guilt was 'correct[,]'" but "whether it was 'rational.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)) (citing *Messer*, 74 F.3d at 1013) ("[T]he Court must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'").

In analyzing the claim under § 2254(d)(1), the Court must determine whether the state court's "conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Hooks*, 689 F.3d at 1166 (quoting *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007)) (subsequent citation omitted). The Court must "view the [New Mexico Supreme Court's] assessment of the jury's verdict through AEDPA's deferential prism." *Meek*, 74 F.4th at 1252 (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *See id.* "The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (citing *Coleman*, 566 U.S. at 651).

## 2. Analysis

Gardner argues that the State did not present evidence sufficient to establish "that he was the shooter in the surveillance video." (Doc. 1 at 31.) He contends that it was error for the prosecutor to tell "the jury that the jailhouse snitch testimony constituted direct evidence of [his] guilt and that they HAD to believe the snitch testimony, even if they did not like them." (*Id.*) He further asserts that the jury was forced "to draw speculative inferences" because the State did not present "physical or direct evidence" to establish his guilt. (*See id.* at 31–32.)

As an initial matter, the Court notes that "substantial circumstantial evidence is sufficient to support a conviction." *Ramirez v. Cent. N.M. Corr. Fac.*, No. 1:21-CV-979 KWR/KRS, 2023

WL 7180468, at *9 (D.N.M. Nov. 1, 2023), *R&R adopted sub nom.*, 2023 WL 8096885 (D.N.M. Nov. 21, 2023), *appeal dismissed sub nom.*, No. 23-2195, 2024 WL 3042162 (10th Cir. Feb. 22, 2024) (citing *New Mexico v. Montoya*, 345 P.3d 1056 (N.M. 2015)). There was no shortage of circumstantial evidence in this case. In addition to the "host of . . . inculpatory evidence" outlined by the trial court in denying Gardner's motion for new trial (*see* Doc. 9-1 at 54), the New Mexico Supreme Court also outlined the weighty circumstantial evidence the State introduced and concluded it was sufficient to find Gardner guilty of first-degree murder and armed robbery. (*See id.* at 341–43.) Gardner develops no argument to show that the New Mexico Supreme Court's decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2).

Moreover, Gardner fails to demonstrate that the New Mexico Supreme Court unreasonably applied the relevant standards. The court correctly applied state law to determine Gardner's insufficient evidence claim. (*See id.* at 340 (citing *New Mexico v. Garcia*, 246 P.3d 1057, 1061 (N.M. 2011); *New Mexico v. Cunningham*, 998 P.2d 176, 183 (N.M. 2000); *New Mexico v. Chavez*, 211 P.3d 891, 895 (N.M. 2009); *New Mexico v. Duran*, 140 P.3d 515, 518 (N.M. 2006)).) The court cites authority that relies on and/or is directly analogous to federal law. *See, e.g.*, *Chavez*, 211 P.3d at 895 ("The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (quoting *Jackson*, 443 U.S. at 319) (preceding citation omitted).

Gardner's complaints center on the fact that the jury had to rely on circumstantial evidence and inferences to convict him. (*See* Doc. 1 at 31.) With respect to the first-degree murder charge, the State was required to establish that (1) Gardner killed Glass; (2) with a deliberate intent to take his life; and (3) in New Mexico on or around July 19, 2013. (*See* Doc. 9-1 at 341 (citing UJI 14-

201 NMRA).) To prove Gardner committed armed robbery, the State "was required to prove that (1) [Gardner] committed a robbery and (2) did so while armed with a deadly weapon." (*Id.* (citing N.M. Stat. Ann. § 30-16-2; UJI 14-1621 NMRA).) In a thorough opinion, the New Mexico Supreme Court examined the evidence and discussed the shaky jailhouse snitch testimony and the inferences the jury would have made to find Gardner guilty. (*See* Doc. 9-1 at 340–43.) The court discussed Gardner's shorts and shoes, which were identical to those worn by the shooter; the fact that Gardner and the shooter both wore glasses and drove identical cars; nine receipts that showed Gardner did business at NJB, most recently a month before the crime; witness testimony identifying a man in Sanchez's neighborhood who drove the same car and moved like the shooter; and the reddish bandana in Gardner's car. (*See id.* at 341–42.) The court found that "[t]he jurors could have viewed the video footage and reasonably concluded it was" Gardner, that he "was familiar with the NJB store and knew exactly where to find the money[,]" and that he intended to kill Glass when he immediately shot him without provocation. (*See id.* at 342.) The court further found "there was sufficient evidence to prove, while armed with a deadly weapon, that [Gardner] robbed" NJB. (*See id.* at 343.) The New Mexico Supreme Court concluded, viewing the evidence as a whole and in a light most favorable to the State, a rational jury could have found the elements of murder and armed robbery beyond a reasonable doubt. (*See id.* at 340–41.) The undersigned finds this determination was objectively reasonable. *See Meek*, 74 F.4th at 1252.

In sum, I find that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found" that the State proved Gardner's guilt "beyond a reasonable doubt." *See Meek*, 74 F.4th at 1252 (quoting *Jackson*, 443 U.S. at 319). I further find that the New Mexico Supreme Court reasonably applied the *Jackson* standard. *See id.* at 1261. Accordingly, I recommend denying Gardner's petition on this issue.

**D.      Gardner fails to show he is entitled to relief on Ground 4: *Miranda* Violation.**

Finally, Gardner asserts a new, unexhausted claim: that his *Miranda* rights were violated during his interrogation. (Doc. 1 at 33.) Specifically, he alleges that the questioning detective advised him of his *Miranda* rights when she asked him about an unrelated homicide case but did not re-advise him of those rights when she asked him about this matter. (*See id.*)

Respondents do not deny that Gardner "could have pursued a meritorious pretrial motion to suppress [Gardner's] statement" during the interrogation based on a *Miranda* violation. (*See* Doc. 9 at 31 (citing Doc. 9-2 at 187).) In analyzing this claim in the context of Gardner's § 2254 petition, the "[e]rroneous admission of evidence in violation of *Miranda* is subject to harmless error review." *See Bushyhead v. Wade*, No. 10-CV-0797-CVE-FHM, 2014 WL 585355, at *22 (N.D. Okla. Feb. 13, 2014) (citing *Arizona v. Fulminate*, 499 U.S. 279, 306–07 (1991); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "In deciding whether the error is harmless the relevant question is whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Ramos v. Shillinger*, 1995 WL 640386, at *5 (10th Cir. Oct. 23, 1995)). In *Brecht*, for example, the Supreme Court "concluded that two pages of testimony out of a 900 page record was harmless error . . . .'" *Ramos*, 1995 WL 640386, at *5 (discussing *Brecht*, 507 U.S. at 637).

The statement admitted in violation of *Miranda* involved Gardner's drug use and addiction. (*See* Doc. 9-2 at 125.) Although Gardner does not develop any argument on this point, he would presumably argue that this admission prejudiced his defense, as the State's theory involved a "motive to commit the robbery because [Gardner] needed money to support his [drug] habit . . . ." (*Id.* at 126.)

Respondents argue that "any *Miranda* violation must be deemed harmless in light of the overwhelming evidence of Mr. Gardner's guilt . . . ." (Doc. 9 at 32.) The undersigned agrees. The state habeas court found, in the context of Gardner's related ineffective assistance claim, that Gardner was not prejudiced by his attorney's alleged failure to move for suppression of his statements during interrogation. (*See* Doc. 9-2 at 190–91.) The court found that the State did not center its closing argument on Gardner's statement to the detectives. (*See id.* at 190.) Rather, "the State primarily relied on videos of the shooting" and on the receipts that linked Gardner to NJB. (*Id.* (citations omitted).) Moreover, the court found that "the State had ample evidence connecting [Gardner] to the crime, apart from his statement . . . ." (*Id.*) The court disagreed that, had Gardner's "statement been excluded, there is a reasonable probability that [the] outcome of the case would have been different." (*Id.* (citing *New Mexico v. Dylan J.*, 204 P.3d 44, 54 (N.M. Ct. App. 2009)).) The undersigned agrees. The State introduced adequate evidence and witness testimony to build a solid case against Gardner. Even without his statement regarding his drug addiction, the Court agrees that there was sufficient evidence for the jury to find Gardner guilty. Accordingly, I recommend finding that Gardner's statement did not have a substantial and injurious effect on the jury's verdict and denying this claim on the merits.

## IV.    Gardner's Motions to Appoint Counsel

Gardner asks the Court to appoint counsel to assist him with his petition. (*See* Docs. 1 at 34; 13; 15.) Because Gardner's claims are meritless and are not overly complex, and because he adequately presented his claims in the petition, I recommend the Court exercise its discretion to deny his requests. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

**IT IS HEREBY RECOMMENDED** that the Court ignore the exhaustion requirement with respect to Gardner's mixed petition and **deny with prejudice** the entire petition on the merits.

(Doc. 1.)

      **IT IS FURTHER RECOMMENDED** that the Court **deny** Gardner's motions to appoint

counsel. (Docs. 13; 15.)

<div style="border: 1px solid black; padding: 10px;">

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these

Proposed Findings and Recommended Disposition they may file written objections with the Clerk

of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with

the Clerk of the District Court within the 14-day period if that party wants to have appellate

review of the proposed findings and recommended disposition. If no objections are filed, no

appellate review will be allowed.**

</div>

_____

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE